```
USDS SDN
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/20/12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

PARK WEST GALLERIES, INC.,

        Plaintiff,

-against-

THERESA FRANKS, an individual, GLOBAL FINE ART
REGISTRY, LLC d/b/a FINE ART REGISTRY, and
JOHN DOES 1-10,

        Defendants.
---------------------------------------------------------------x

No. 12 Civ. 3007 (CM)

## DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

McMahon, J.:

### I. INTRODUCTION

This is a motion to dismiss based on a lack of personal jurisdiction and improper venue.

The facts are drawn from the Amended Complaint and the affidavits and declarations submitted by the parties.

Plaintiff Park West Galleries Inc., referred to herein as "Plaintiff," is a Michigan company doing business in Michigan. (ECF No. 11, Am. Compl. ¶ 1.) Plaintiff sells artwork, often on cruise ships, to customers from around the United States, including New York. (ECF No. 16, Gordon Decl. ¶ 2-3.)

Defendant Theresa Franks, an Arizona resident, founded and operates Defendant Global Fine Arts Registry, L.L.C., which does business as Fine Art Registry, or "FAR." (Am. Compl. ¶¶ 2-3.) FAR runs a website, www.fineartregistry.com, through which FAR pursues at least two missions: exposing fraud in the art world, and selling its own line of ID tags for artwork, which

1

can be used to upload authentication information into an online database maintained by FAR and accessible only by paying FAR members. (See Franks Aff. ¶ 4; Frank Reply Aff. ¶¶ 6-7.)

I refer to Franks and FAR collectively as "Defendants" herein.

The dispute at the heart of this, and ten other lawsuits Plaintiff has filed across the United States, is a campaign the Defendants have carried out through their website, direct contact with Plaintiff's customers, and litigation. The purpose of this campaign is either (1) to besmirch Plaintiff's reputation and destroy its business through a variety of false or misleading statements, in an effort to promote and sell Defendants' art authentication services, as Plaintiff contends; or (2) to reveal Plaintiff as an unrepentant fraudster in order to protect the art-consuming public, as Defendants contend. Who is right and who is wrong is not important to the resolution of this motion.

## II. BACKGROUND

Plaintiff sued Defendants in New York Supreme Court, New York County, on March 7, 2012. On April 16, 2012, Defendants removed the case to this Court on the basis of the parties' diverse citizenship and an amount in controversy greater than $75K. (ECF No. 1.) Defendants moved to dismiss for lack of personal jurisdiction on April 19.

In response, Plaintiff filed an Amended Complaint, which is substantially identical to its Original Complaint. In it, Plaintiff alleges that Defendants have for several years carried out a "cyber-smear campaign" against Plaintiff and its business practices. (Am. Compl. ¶ 8.) Plaintiff provides detailed and extensive examples of commentary from Defendants' website that does, in fact, call into question the quality and authenticity of Plaintiff's goods, as well as Plaintiff's integrity. (Id. ¶¶ 8-18.) The purpose, and the actual effect of this campaign has been to cause thirty-four of Plaintiff's customers in New York to breach their agreements with Plaintiff by, for

example, demanding refunds for paintings already purchased. The Amended Complaint asserts four causes of action: tortious interference with contractual and business relationships; tortious interference with advantageous business relationships; civil conspiracy (a non-existent tort in New York); and prima facie tort (a virtually impossible to maintain tort in New York). (Id. ¶¶ 23-44.) Interestingly, Plaintiff does not allege a cause of action for defamation.

If Plaintiff's allegations encompassed no more than Defendants' critical web postings – written and published by an Arizona resident and viewable online by New Yorkers – the resolution of this motion would be complicated. See, e.g., Best Van Lines, Inc. v. Walker, 490 F.3d 239 (2d Cir. 2007). However, Plaintiff alleges more. Paragraphs 19-21 of the Amended Complaint (much like paragraphs 17-19 of the Original Complaint), say that Defendants intentionally reached out to Plaintiff's New York customers via direct telephone calls and emails. In these calls and emails, Plaintiff alleges, Defendants encouraged Plaintiff's customers to breach their contracts with Plaintiff, and employed illegal and malicious means to do so. (Am. Compl. ¶¶ 19-21; see also Or. Compl. ¶¶ 17-19.) Plaintiff also alleges, on information and belief, that Defendants "derive substantial revenue from interstate or international commerce." (Am. Compl. ¶ 5.)

Defendants chose not to re-file their motion to dismiss in light of the Amended Complaint, but instead rely on their original submission. This includes an affidavit from Franks, which avers, among other things, that Defendants "do not transact any business within the State of New York," that Franks "never purposefully or knowingly reached into New York for any reason," and that Defendants "do not derive substantial revenue from interstate or international commerce." (Franks Aff. ¶ 7.) Attached to Franks' affidavit are the complaints in 10 more lawsuits that Park West has filed against Defendants in 10 different jurisdictions, all of which

3

make the same or similar allegations, predicated on efforts to reach Park West customers in those states.

In addition to relying on the allegations of the Amended Complaint, Plaintiff opposes the motion with two declarations. In the first, Mary Gordon, one of Plaintiff's customer representatives, describes occasions when Park West customers from New York demanded refunds. The customers' stated reasons for doing so are, of course, hearsay – a wrinkle to which I will return below. Gordon attaches as an exhibit an email, forwarded to Plaintiff from one of its customers, from David Phillips, apparently a "Publications Director" for Defendants. In the email, Phillips encourages the customer to seek a refund from Plaintiff, and encourages the customer to become a member of FAR in order to obtain help in doing so. (See Gordon Decl., Ex. 1.)

Plaintiff's other declaration is from Alice Meyer, one of Plaintiff's attorneys. She describes browsing Defendants' website over a three week period last month, and capturing a series of screenshots of it; the screen shots are attached as exhibits. These screen shots reflect Defendants' ID tag business; its business selling DVDs exposing art fraud; its consulting service; and its member services packages.

To become a member of FAR, it is necessary to pay membership fees. (See Meyer Decl., Ex. 1; Gordon Decl. Ex. 1; Franks Reply Aff. ¶ 7.) A screen shot attached to the Meyer declaration touts FAR's new members, and shows that FAR has members from the United Kingdom, Canada, Massachusetts, New Jersey, California, Illinois, Pennsylvania, Connecticut, and New York, among other jurisdictions. Another screenshot shows FAR's business "partners," some of whom are located in Russia, California and New York.

4

While the motion was *sub judice*, Plaintiff suggested that I might delay ruling on the motion until an MDL panel, convened to manage the various lawsuits between the parties, renders a decision on whether and where to consolidate them. I see no need to do that; indeed, I think the MDL panel should know whether this case is properly brought in New York.

I am denying Defendants' motion.

### III. ANALYSIS

A. Motion to dismiss under 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing jurisdiction. The applicable standard depends upon the procedural context in which the jurisdictional challenge is raised.

Where no discovery has taken place, the plaintiff need make only a prima facie showing of jurisdiction "by pleading in good faith legally sufficient allegations of jurisdiction." Navaera Sciences, LLC v. Acuity Forensic Inc., 667 F. Supp. 2d 369, 373-74 (S.D.N.Y. 2009) (internal alteration, quotation marks, and citations omitted). If, as is the case here, affidavits are submitted, the Court is to resolve factual disputes in the plaintiff's favor. Id.

As my esteemed colleague Judge Lewis A. Kaplan recently explained,

> Analysis of personal jurisdiction requires a two-step inquiry. A court first must determine whether the law of the state in which the action was commenced would permit the exercise of personal jurisdiction by courts of general jurisdiction in that state. The court then must determine whether the exercise of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment.

Id. at 374 (footnote and citation omitted).

1. *Statutory jurisdiction.*

The parties join issue on nearly every conceivable basis for statutory jurisdiction. However, because Plaintiff has clearly identified a statutory basis in New York CPLR

5

§ 302(a)(3)(ii), it is not necessary for this Court to address the parties' remaining statutory arguments. Courts routinely avoid answering complicated issues of statutory jurisdiction when it is not necessary to do so. See, e.g., Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 571 (S.D.N.Y. 2000).

Jurisdiction under CPLR 302(a)(3)(ii) rests on five elements: (1) defendant committed a tortious act outside New York; (2) the cause of action arises from the act; (3) the act caused injury to a person or property in New York; (4) defendant expected or should reasonably have expected the act to have consequences here; and (5) the defendant derived substantial revenue from interstate or international commerce. See LaMarca v. Pak–Mor Mfg. Co., 95 N.Y.2d 210 (2000)); see also Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd., 568 F. Supp. 2d 329, 336 (S.D.N.Y. 2008).

Plaintiff has adequately alleged a tortious act without the State that gives rise to its causes of action: Defendants' acts of calling, or emailing, or chatting online directly with Plaintiff's New York customers, and knowingly causing those customers to breach their contracts with Plaintiff by telling them defamatory lies. Assuming Defendants did what Plaintiff alleges, they should have reasonably expected their acts to have consequences in New York: namely, causing Plaintiff's customers to breach their contracts in New York.

Finally, Plaintiff has adequately alleged that Defendants' ID tag and other businesses derive substantial revenue from among the several states. The New York Court of Appeals explains that:

> The fifth element – defendant's deriving substantial revenue from interstate or international commerce – is designed to narrow the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a local character.

6

LaMarca, 95 N.Y.2d at 215 (internal quotation marks and citations omitted). As alleged in the Amended Complaint, and illustrated in the numerous screen shots submitted, FAR collects memberships fees from people all over the world, including New York. In short, FAR is not exclusively a local Arizona business.

The only real dispute as to the applicability of section 302(a)(3)(ii) is whether Plaintiff, a Michigan business, has suffered an injury "within New York State." As my colleague Judge Karas explained in Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd., 568 F. Supp. 2d 329 (S.D.N.Y. 2008):

> [C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the "original event" which caused the injury. This "original event" is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort.

Id. at 336-37 (some internal quotation marks and citations omitted).

For purposes of a tortious interference claim, the situs of the injury is where the induced breach occurred. As Justice Fried explains in Iconoclast Advisers LLC v. Petro-Suisse Ltd., 17 Misc. 3d 1101(A), at *8 (Sup. Ct. New York County 2007) (Fried, J.), "In a tortious interference with contract claim, the first effects are felt where the contract was to be performed by plaintiff, who was prevented from performing and reaping the benefits thereof."

Numerous Federal courts applying the CPLR have likewise held that, "lost sales or customers can satisfy the 'injury within New York' requirement under Section 302(a)(3)(ii), [but] those lost sales must be in the New York market, and those lost customers must be New York customers." Darby, 568 F. Supp. 2d at 336-337. In Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779 (2d Cir. 1999), the Second Circuit alluded to its earlier holding that, in the analogous context of the tort of unfair competition, "the situs of injury was the place where

the plaintiff lost business." Id. at 793 (citing American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428 (2d Cir. 1971)); see generally Penguin Group (USA) Inc. v. American Buddha, 609 F.3d 30, 38-39 (2d Cir. 2010) (discussing Sybron Corp. v. Wetzel, 46 N.Y.2d 197, 205 (1978)).

Plaintiff alleges that Defendants successfully induced breaches, via telephone calls and emails to Plaintiff's New York customers, costing Plaintiff numerous sales and customers in New York. These allegations are sufficient to state an injury "within" New York under section 302(a)(3)(ii). Foot Locker Retail, Inc. v. SBH, Inc., 2005 WL 91306, at *4-5 (S.D.N.Y. Jan. 18, 2005).

Defendants raise two objections, one legal and one factual.

The legal objection is that the situs of injury rule just stated – breaches induced in New York that cost the plaintiff New York customers – only applies when the plaintiff invoking the court's long-arm jurisdiction is a "forum plaintiff" – i.e., a New York resident. Because Plaintiff is a Michigan resident, it does not suffer injury in New York under these allegations, but at its corporate headquarters in Michigan.

Defendants rely on a ruling by the Hon. George King of the Central District of California in one of the companion litigations. See Park West Galleries, Inc. v. Theresa Franks, et al., CV 12-3203 (C.D. Cal. May 25, 2012). Judge King applied California law, which is intended to extend to the limits of constitutional due process and no further. Judge King therefore looked to constitutional cases, particularly the "effects test" of Calder v. Jones, 465 U.S. 783 (1984), which, similar to CPLR 302(a)(3)(ii), allows the exercise of jurisdiction where "Defendants . . . have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" Id. (citation omitted).

The pertinent jurisdictional allegations in the California case were the same as they are here: that Defendants communicated by phone or email with Plaintiff's California customers, inducing them to breach their contracts in California. Judge King held that this was not enough to establish long arm jurisdiction consistent with the Constitution. Although he assumed the allegations met the first two requirements of the "effects test" -- an intentional act expressly aimed at California -- he found that Plaintiff suffered no harm in California. "The mere fact that Plaintiff had to pay refunds to its California customers does not mean that Plaintiff suffered harm *in* California. Even if Plaintiff's allegations are true, the harm is still suffered in Michigan, where its assets were diminished." Id.

Judge King distinguished several California cases Plaintiff relied on that, like Darby and Iconoclast, suggest that the situs of injury for its tortious interference claim is in the jurisdiction where it loses its business opportunity. He pointed out that all of Plaintiff's cases involved "forum plaintiffs," i.e., plaintiffs who were also California residents. This is consistent with Judge King's view that the situs of injury for this sort of commercial tort is the residence or principal place of business of the plaintiff.

Defendants suggest that I follow Judge Kind and distinguish the New York authority cited above on the same grounds.

I decline to do so.

First, Defendants obviously rely on a California judge's ruling, because New York cases that have addressed the same question -- including the Second Circuit, whose decisions bind me -- come out the other way; the situs of injury in a tortious interference claim is where its "first effects" are felt, rather than either where the tort initiates (here, Arizona), or where its ultimate effect is felt (here, Plaintiff's headquarters in Michigan). See 777388 Ontario Ltd. v. Lencore

9

Acoustics Corp., 142 F. Supp. 2d 309, 323 (E.D.N.Y. 2001) (discussing Bank Brussels, 171 F.3d at 779); see also American Network, Inc. v. Access America/Connect Atlanta, Inc., 975 F. Supp. 494, 497 (S.D.N.Y. 1997).

Other authority specifically identifies the situs-of-injury in a tortious interference claim as the place where the customer or contract is lost. While a principal place of business test may be appropriate for some economic injuries, New York courts have not held that an injury is only felt "within" New York State when the plaintiff's business operations are based there. For example, faced with nearly identical allegations – that defendant interfered with business relations by placing a call to one of plaintiff's New York customers – Judge Batts held, in Footlocker, that jurisdiction was appropriate under CPLR § 302(a)(3)(ii). The reason was not plaintiff's New York residence, which she specifically found to be an insufficient basis for finding the situs of injury to be in New York. Rather, the reason was that New York was the place where plaintiff lost its customer. Footlocker, 2005 WL 91306, at *4.

No New York case applying the situs of injury test relies on either the plaintiff's residence or principal place of business. Instead, the courts cited permit the exercise of jurisdiction when New York customers are lost and New York contracts are breached. Thus, non-forum plaintiffs have been allowed to invoke 302(a)(3)(ii) on the basis of the loss of New York customers. For example, in Facit, Inc. v. Krueger, Inc., 732 F. Supp. 1267 (S.D.N.Y. 1990), neither the plaintiff, Facit, nor the counter-plaintiff, Kruegger, resided in New York. Nevertheless, Judge Keenan upheld the exercise of personal jurisdiction over non-resident defendants whose alleged torts cost Kruegger business in New York. "The harm alleged to have been inflicted within New York is the actual or potential loss of business, damage to customer relations, business reputation and goodwill." Id. at 1273-74.

10

Even in New York cases where a forum plaintiff is involved, the plaintiff's residence has not been treated as legally significant. For example, Citigroup appears to involve a New York plaintiff, but nothing is made of that fact. Indeed, beyond identifying plaintiff as a New York business, the Court makes no mention of plaintiff's residence at all. Rather, the court's rationale in finding personal jurisdiction is that the defendant's out-of-state torts injured plaintiff's business with New York customers:

> Injury within the state includes harm to a business in the New York market in the form of lost sales or customers. This rule is satisfied by Citigroup's claim that its actual and potential customers in New York are confused or deceived when they view and interact with the City National web sites.

Citigroup, 97 F. Supp. 2d at 568 (internal citations omitted).

That many 302(a)(3)(ii) cases involve forum plaintiffs is not surprising, as it will often be convenient for a plaintiff to litigate in his home forum, and plaintiff is master of his complaint. Moreover, having a base of business operations in New York will tend to make it more likely that one has customers and business opportunities in New York that can be tortiously undermined. See, e.g., 777388, 142 F. Supp. 2d at 323-24. But these practical realities have no legal significance; residence in the forum is not necessary to invoke the court's long arm jurisdiction over one who causes injury to a plaintiff in New York.

Here, Plaintiff alleges that it lost customers and sales as a result of Defendants' tortious behavior. It says that New York is a more convenient forum than Michigan for the claims it brings because Plaintiff will find it easier to obtain the testimony of its New York customers here, where they are subject to this Court's process. Whether this really is the reason, or whether Plaintiff is simply trying to harass Defendants with far-flung lawsuits, is not relevant to the question of this Court's jurisdiction, its power to hear this case and bind Defendants with a judgment, if necessary. Because Plaintiff alleges an injury to its business in the form of lost

11

New York customers and sales, it is free to invoke the jurisdiction of the Court, which extends in personam to Defendants.

The Hon. William Young, of the District of Massachusetts, reached the same conclusion in yet another of the companion litigations, Park West Galleries, Inc. v. Theresa Franks, et al., CV 12-10588 (D. Mass. June 6, 2012). There, as here, Plaintiff alleged that Defendants purposefully contacted its Massachusetts customers and induced them to breach their contracts with Plaintiff. Judge Young found these allegations sufficient to state a basis for jurisdiction. Insofar as his decision is consistent with controlling Second Circuit precedent, I will follow his lead rather than Judge King's.

Defendants' "factual" objection, alluded to above, is that Plaintiff relies on hearsay to establish this basis for jurisdiction – presumably the words of its customers. As noted above, Plaintiff alleges in its Original Complaint, and again in its Amended Complaint, that Defendants contacted its New York customers by phone, email, or online to induce them to breach their contracts with Plaintiff. (See ECF No. 1, ¶¶ 17-19; ECF No. 11, ¶ 19-21.) In the absence of any discovery, these allegations must be taken as true, and they suffice to state a jurisdictional basis.

However, Plaintiff was not content to rest on the allegations of its Amended Complaint, but opposed this motion with a declaration from its customer service representative, Mary Gordon. The Gordon declaration is rife with hearsay, all of it along the following lines: a Park West customer from New York called me for a refund; when I asked why, the customer told me that they were induced to do so by things Defendants said to them.

"While it is proper for a court to rely on affidavits to establish jurisdictional facts, hearsay evidence submitted by a plaintiff is not sufficient to defeat a motion to dismiss for lack of personal jurisdiction." Dejana v. Marine Technology, Inc., 2011 WL 4530012, at *3 (E.D.N.Y.

Sept. 26, 2011) (quoting <u>Gosain v. State Bank of India</u>, 689 F. Supp. 2d 571, 582 (S.D.N.Y.2010) <u>vacated in part on other grounds</u> 414 Fed. Appx. 311 (2d Cir. 2011)). Thus, Defendants argue that I should not consider the Gordon declaration in my analysis.

But Gordon is a percipient witness to what was said to her; she is competent to testify to the words she heard over the telephone. For trial, of course, Plaintiff will have to obtain the testimony of its customers in order to establish that Defendants said things to them – which out of court statements will not be hearsay, because they are being offered to prove that they were said. (Franks denies personally speaking with any Park West customers in New York.) Meanwhile, Gordon's testimony gives heft and weight to the bare allegations of the Amended Complaint, which are presumed to be true. If Defendants' argument were accepted, Plaintiff would have to prove ultimate facts now, today – before discovery – just because those ultimate facts gave jurisdictional implications. But the law is clear – prior to discovery, plaintiffs do not have to prove anything at this juncture.

In addition to the testimony provided by Ms. Gordon, Plaintiff attaches to her declaration a copy of an email that appears to have been sent from Defendants to one of Plaintiff's customers, and thereafter forwarded to Plaintiff. The email is a party admission against interest; unless it is a fake email, it proves that Defendants did what Plaintiff says they did: contacted its customer and advised him to breach his contract with Plaintiff. It also suggests that there is more evidence out there than just the testimony of Plaintiff's former customers.

2. *Exercise of statutory jurisdiction consistent with due process*

Having identified a sufficient statutory basis for personal jurisdiction, the Court proceeds to consider whether exercising that jurisdiction would be consistent with due process. "As the Second Circuit has noted, the due process test for personal jurisdiction has 'two related concepts:

13

the "minimum contacts" inquiry and the "reasonableness" inquiry.'" Boehner v. Heise, 410 F. Supp. 2d 228, 238 (S.D.N.Y. 2006) (quoting Metropolitan Life Ins. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)).

### a. Minimum Contacts

The minimum contacts test rests on whether a defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Boehner, 410 F. Supp. 2d at 238 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). A nonresident defendant has minimum contacts with the forum state if he or she commits "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Boehner, 410 F. Supp. 2d at 238 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Moreover, a defendant's contacts with the forum must either be "continuous and systematic," or the suit must arise out of or be related to those contacts. Boehner, 410 F. Supp. 2d at 238 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)).

Here, I have already found, in the context of applying the CPLR, that Plaintiff has adequately alleged that Defendants (1) committed acts that should lead them to reasonably anticipate being haled into court in New York – calling, emailing, or communicating through the website with Plaintiff's New York customers – and that (2) the tortious interference and related claims arise out of those acts. As I also noted above, the CPLR 302(a)(3)(ii) standard reflects the constitutional standard of Calder v. Jones, which applies when a defendant commits an out-of-state tort that is aimed at, and causes injury in, the forum state. Contrary to the decision out of the Central District of California, I find that test to be satisfied here because the situs of the injury that Plaintiff alleges is New York. See supra.

14

Thus, I find that Plaintiff has alleged the necessary minimum contacts between Defendants and New York.

### b. **Reasonableness**

Beyond minimum contacts, courts consider additional factors to determine whether the exercise of personal jurisdiction would comport with "fair play and substantial justice." These factors include: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering substantive social policies. Boehner, 410 F. Supp. 2d at 239 (citing Burger King v. Rudzewicz, 471 U.S. 462, 476-77 (1985)). Importantly, however, where, as here, it has already been determined that the defendant has minimum contacts with the forum state, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." See generally Burger King, 471 U.S. at 476-77.

If, as Plaintiff alleges, Defendants telephoned or communicated online with New York residents, and told them lies about Plaintiff to injure Plaintiff's business relationships here, then it is reasonable to ask Defendants to defend themselves here for doing so. Defendants maintain a nationwide art ID tag, database and consulting services business; they direct their advertising efforts all over the world via the internet, and, according to Plaintiff, have directed their combined attack-campaign/sales pitch here as well. The burden on Defendants of traveling to New York is considerable, but it is no worse here than it would be in Michigan, or Massachusetts, or any of the other states where it might be haled into court based on its alleged conduct. If the complaint is that Defendants are being forced to litigate in a dozen different

litigations, that is a consideration for the MDL panel; it does not affect the discrete question of whether a single litigation in New York would be unreasonable.

While New York has no great interest in settling the dispute between this Michigan Plaintiff and these Arizona Defendants, New York customers are involved. According to who is right, they have either been bamboozled by Plaintiff or Defendants; sorting out which, and providing legal certainty to Plaintiff's New York customers, may give this forum some interest in adjudicating the case.

As noted, Plaintiff suggests at least one non-harassment-inspired motivation for litigating here, rather than in Michigan or Arizona: the greater convenience to it and its potential witnesses – New York customers. As noted, I don't need to believe that this is Plaintiff's actual motivation for filing here to appreciate the convenience to Plaintiff in securing their New York customers' attendance. The interstate judicial system's interest in obtaining efficient resolution of controversies and the shared interests of the states in furthering social policies do not bear significantly on the constitutional analysis of this motion. The MDL panel will, of course, consider similar interests under its statutory mandate.

I find that the exercise of statutory jurisdiction under CPLR 302(a)(3)(ii) is consistent with due process.

B. Motion to dismiss under 12(b)(3)

Defendants argue that venue is improper under 28 U.S.C. § 1391, and move to dismiss on that basis. However, as Plaintiff points out in its opposition, this case was removed from New York State Supreme Court, New York County. Venue is therefore proper in this District under 28 U.S.C. § 1441(a). As my colleague Judge Rakoff of this District recently held, "Once a case

16

has been removed from state to federal court, venue for the action is governed by federal law, which identifies the 'district and division embracing the place where such [removed state] action is pending' as the proper location." Thomas and Agnes Carvel Foundation v. Carvel, 736 F. Supp. 2d 730, 754 (S.D.N.Y. 2010) (quoting 28 U.S.C. § 1441(a)).

## IV. CONCLUSION

The action will be stayed in this Court until the MDL panel rules. Counsel are instructed to notify the Court immediately after that happens. Friday's conference is postponed, and counsel need not appear.

Dated: June 20, 2012

_____
U.S.D.J.

BY ECF TO ALL COUNSEL